# UNITED STATES DISTRICT COURT

### District of Maryland

FILED                    ENTERED
_____        _____ RECEIVED
LOGGED

OCT 1 6 2013

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
DEPUTY

Dennis Shipman,
Petitioner, *Pro Se*

Civil Case No.:   ℛLR: **13 CV 3080**

vs.

Civil Rights Complaint
Pursuant to
42 USC § 1983

Alexandria Nichols Williams, both personally and in her official capacity;
Ben C. Clyburn, both personally and in his official capacity;
Leo Ryan Jr., both personally and in his official capacity;
Roberta "Bobby" Wanaker, personally and in her official capacity;
Maria R. Fields, personally and in her official capacity;
Defendant(s)

## COMPLAINT

Petitioner in the above captioned matter, allege(s) as follows:

## JURISDICTION

This is a civil action seeking relief and/or damages to defend and protect the rights guaranteed by the Constitution of the United States. This action is brought pursuant to 42 USC § 1983. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343(3) and (4) and 2201.

## PARTIES

Petitioner: Dennis Shipman
Address: 8658 Rock Oak Road
Parkville, MD 21234

Defendant: Ben C. Clyburn
Address:  Robert C. Murphy Courts of Appeal Building
361 Rowe Blvd., Annapolis, MD 21401 - 2395

Defendant: Roberta "Bobby" Wanaker
Address: Maryland Judicial Center
A-3, 580 Taylor Ave
Annapolis, MD 21401 - 2395

3

Defendant(s): Alexandria Nichols Williams
Leo Ryan Jr., Maria R. Fields
Address: 120 East Chesapeake Ave., Towson, MD 21286

## FACTS

1. Petitioner alleges that Alexandria Nichols Williams, District Administrative Judge, District Court of Maryland, District 8, Baltimore County engaged in "improper communication with only one of the parties or attorneys in a case" and, in fact, made unlawful *ex parte* rulings upon information and belief with the tacit consent of Maryland District Court Chief Judge Ben C. Clyburn, who was personally noticed of her prejudicial and biased rulings, as well as numerous other serious procedural improprieties in the underlying civil court matter, but neglected to exercise administrative and/or judicial oversight causing petitioner demonstrable physical harm; pain, suffering and embarrassment.

2. A cursory review of the docket in the matter in question will demonstrate that after an automatic bankruptcy stay was improperly lifted shortly after an initial hearing on April 22nd in a "holding over" complaint, which was easily defensible because adversarial party never served petitioner with 30 days notice as is required by [Maryland] state law and as a tenant himself, the adversarial party had no legal standing to bring this action, upon information and belief Williams communicated that the case can move forward to adversarial party and, unbelievably, what relief with which to plead, enabling adversarial party to promptly obtain a default judgment on April 30th signed by none other than Williams herself.

4

3. There is no evidence according to the court record that petitioner was ever noticed of either the re-scheduled hearing (if there ever was one and petitioner is hard-pressed to find any evidence there was) or of this adverse ruling. He learned of it only through his own diligence.

4. Petitioner immediately wrote to the court in the person of Chief Clerk Roberta "Bobby" Wanaker and Chief Judge Ben Clyburn requesting another copy of the order and, more importantly, re-scheduled hearing. Neither one responded, however.

5. The adversarial party subsequently filed a Petition for Warrant of Restitution. Petitioner again immediately objected to this chicanery on the record, appealed, and filed for a motion to stay.

6. Confronted by petitioner's persistence, diligence and acumen, Williams improperly denied every single one of petitioner's motions and appeals in "one fell swoop" on Wednesday, May 16th, and ordered an eviction on Thursday, May 17th without providing petitioner with *any* written notice as is required by local court rules, state law, and the due process and equal protection clause to the 5th and 14th amendment of the United States Constitution.

7. Conversely, Williams deliberately impeded, hindered or otherwise prevented adequate time for petitioner to appeal these outrageous rulings to Circuit Court.

8. On Wednesday, May 16th Leo Ryan Jr., Associate Judge, District Court of Maryland sealed the deal when the constable served the notice of eviction, petitioner protested, and Williams ordered him to court, again with no notice only a verbal order through the constable.

9.  Ryan initially feigned ignorance as to why petitioner, who was hyperventilating, wrought with anxiety, and had foregone his breathing treatment that morning as a direct consequence of William's unlawful order, was before him.

10. When questioned as to how he became familiar with the facts associated with the case, he said that he reads every case beforehand, but had obviously been coached upon information and belief by Williams.

11. He was not only demeaning, disrespectful and patronizing toward petitioner, who was a state certified "first responder," but demonstrably wrong on the law (see Maryland Rules of Civil Procedure, Rule 2-115) (Objections to service, improper service, or ineffective service of process requires a hearing and an appeal if petitioner does not prevail. In this case the judges in question ignored virtually all of these procedural safeguards in order to punish petitioner who is an informed layman and, as such, seasoned litigator.)

12. Petitioner argued to Ryan on the record that he never received notice of the re-scheduled hearing on or about April 22nd or, more importantly, a signed copy of the Warrant for Restitution, which ought to have resulted in at least the eviction being held in abeyance.

13. Ryan said on the record that irrespective of the serious allegations of improprieties raised by petitioner, the "eviction will happen today."

14. Petitioner argued that the court lacked jurisdiction to order an eviction because jurisdiction had been divested by a Circuit Court appeal.

15. Ryan again smugly dismissed petitioner's objections erroneously claiming the District Court had not divested jurisdiction because petitioner's appeal along with required bond waiver had not yet been "perfected."

6

16. However, appeals to Circuit Court from District Court in the state of Maryland are supposed to be accomplished simply by filing an appeal with the District Court clerk, alone with either the bond or request for bond waiver, who in this case intentionally neglected to file it with the Circuit Court, which would have stayed any adverse action until the higher court could review the glaring improprieties giving raise to this civil rights complaint.

17. A cursory review of the docket sheet will clearly show that the clerk intentionally neglected to file the appeal and, more importantly, the adverse rulings were all made in one day with final execution the very next and only the adversarial party being properly noticed in writing.

18. That inexcusable, outrageous abuse of discretion represents a *prima facie* finding of prejudice and bias, abuse of discretion, and official [judicial] misconduct, which manifested in the *ex parte* rulings predicated on communication strictly with adversarial party and, ultimately, an unlawful eviction that embarrassed petitioner exacerbating the symptoms of his disabilities, which could've killed him, period.

19. Petitioner was only made aware of the eviction *after* the constable knocked on his door.

20. It was unlawful, unethical, sanctionable, and compensable done as it was while acting under "color of law."

21. The *coup de grace* was Williams ordering Civil Division Chief Maria R. Fields to give the constable, who improperly called Baltimore County Police Department to back-up, the go ahead to execute the eviction although Petitioner had secured the $1,000 bond to stay eviction until Circuit Court could rule and only took 45 minutes to do so, who gleefully did so nonetheless.

7

22. Scoffing, smirking, sharing knowing glances and/or ignoring the fact the petitioner is "totally and permanently" disabled as a direct consequence of service in his official capacity at ground zero on 9/11, all of these court administrators and judges conspired in kangaroo court like fashion to deprive petitioner of procedural due process and equal protection under the law.

23. This is the State of Maryland, governed by the rule of law, not a banana republic where due process is nonexistent, and hapless "disabled" defendants (see attached) are either summarily executed or otherwise demonstrably harmed, however.

24. The Supreme Court has interpreted the United States Constitution to construct laws regulating the actions of the judiciary.

25. Under "color of law", it is a *crime* – i.e., official misconduct - for one or more persons using power given to him or her by a governmental agency (local, state or federal), to willfully deprive or conspire to deprive another person of any right protected by the Constitution or laws of the United States.

26. Criminal acts under color of law include acts within and beyond the bounds or limits of lawful authority. Off-duty conduct may also be covered if official status is asserted in some manner.

27. Color of law may include public officials and non-governmental employees who are not law enforcement officers such as *judges (emphasis here)*, prosecutors, and private security guards (also see *Gannett Co., Inc. v. Anderson*, 2006 WL 2986459 at 3 (Fla. 1st DCA Oct. 20, 2006).

28. The overwhelming evidence of wrongdoing, abuse of discretion, and official misconduct against the judges and clerks in question is supported by a cursory not even thorough or exhaustive review of the docket, which clearly substantiates this complaint.

29. It is totally absent of *any* written *notice* denying petitioner's appeal(s), notice that the stay had been lifted either on or about April 22nd and another hearing scheduled (indeed there is no evidence that there ever was another hearing), or that his appeal to the Circuit Court had been duly filed as is required by due process provisions of the Maryland constitution *before* an eviction can be legally executed.

30. In short, a judge cannot deny an appeal, fail to notice an interested party of an adverse order, and *immediately* order execution, which in this case was the unlawful eviction of a disabled person embroiled in a defensible dispute with his roommate who had no legal standing to bring this matter before the court in the first instance.

31. It is akin to dragging a hapless defendant into court (as they did), immediately dismissing his objections, and executing…

32. Petitioner is not that stupid nor is anyone with a law license objectively reviewing such an egregious violation of a disabled petitioner's constitutional right to procedural due process.

33. The unlawful eviction was then made part of the official court record for creditors, potential landlords, and adversarial parties to review adding insult to the injury already suffered at the hand of these bumbling, malicious, biased court personnel.

34. Petitioner is "totally and permanently" disabled. He cannot effectively apply for housing on a fixed income with this type of derogatory information on his credit report hindering those efforts.

9

35. That permanent defamatory record coupled with the embarrassment, pain and suffering at being unlawfully evicted from his home has exacerbated the symptoms of petitioner's disabilities in violation of his rights under the Fifth and Fourteenth Amendments to the US Constitution, Bill of Rights; Civil Rights Act (codified under 42 U.S.C. Section 2000e-16); Americans with Disabilities Act (codified as 42 U.S.C. §§ 12111–12117); and, Rehabilitation Act (codified in 29 U.S.C. § 701 *et seq*).

36. This civil rights complaint was properly served by first class and electronic mail and facsimile on Maryland state treasurer Nancy Kopp on or about May 31, 2013 pursuant to the Maryland Tort Claims Act §12-101 *et seq*, in which Maryland waives immunity to suit under the 11th Amendment after it receives "A concise statement of facts describing the nature of the claim, including date, place and time of occurrence;

    • A demand for specific damages;

    • Names and addresses of all parties; name, address, and telephone number of counsel for the claimant, if any;

    • Must be signed by the claimant his legal representative, or counsel." (See MD. CODE ANN., CTS. & JUD. PROC. § 5-304 (2008) also MD. CODE ANN., STATE GOV'T § 12-106. Maryland District Court judges and clerks are designated State of Maryland employees.)

37. Judges, especially those so undistinguished as to be sitting in the District Court, the lowest court in the state, are not shielded from the consequences of their bias and prejudice, misfeasance and ineptitude by virtue of absolute immunity, when engaging in misconduct clearly outside the scope of their appointed duties but causing harm to parties "under color or [state] law" nonetheless.

38. The factual allegations in the plaintiff's complaint must be accepted as true and those facts must be construed in the light most favorable to the plaintiff.

39. Edwards v. City of Goldsboro 178 F.3d 231, 244 (4th Cir. 1999). Moreover, a pro se litigant's complaint should not be dismissed unless it appears beyond doubt that the litigant can prove no set of facts in support of her claim that would entitle her to relief, Goron v. Leeke, 574 F.2d 1147 (4th Cir. 1978). Under Rule 8(a)(2) a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

40. A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 570 (2007); See also Simmons v. United Mort. and Loan Inc., LLC, 634 F.3d 754, 768 (4th Cir. Jan. 21, 2011). The Supreme Court has explained that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice to plead a claim." Ashcroft v. Iqbal 556 US ___, 129 S. Ct. 1937, 1949 (2009). Thus, a court must "draw on its judicial experience and common sense" to determine whether the pleader has stated a plausible claim for relief.

## STATUTORY AUTHORITIES

41. Only "persons" under the statute are subject to liability. A state is not a person subject to suit under section 1983, but a state officer can be sued in his official capacity for prospective or injunctive relief despite the fact that a suit against a government official in his official capacity represents nothing more than a suit against the government entity itself.

42. Despite this logical inconsistency, the current state of the law is that a state may not be sued for damages, but may be sued for declaratory or injunctive relief. Municipalities and local governments are persons subject to suit for damages and prospective relief, but the United States Government is not.

43. *Individual employees of federal, state and local government may be sued in their individual capacities for damages, declaratory or injunctive relief.*

44. While the determination of who is a "person" is a matter of federal statutory interpretation, the matter of who has the capacity to be sued is determined by the law of the forum state. Likewise, the law of the forum is to be applied in actions under section 1983 where the law of section 1983 provides no guidance.

45. The traditional definition of acting under the color of state law requires that the defendant have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law," and such actions may result in liability even if the defendant abuses the position given to him by the state.

46. A private actor may also act under color of state law under certain circumstances. For example, it has been held that a physician who contracts with the state to provide medical care to inmates acts under the color of state law.

12

47. For all practical purposes, the "color of state law" requirement is identical to the "state action" prerequisite to constitutional liability. Traditionally, though, it has been construed to mean judicial officers.

48. Section 1983 does not impose a state of mind requirement independent of the underlying basis for liability, but there must be a causal connection between the defendant's actions and the harm that results.

49. In order to hold a local government liable under section 1983, the Supreme Court has interpreted this causation element to require that the harm be the result of action on the part of the government entity that implemented or executed a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers, or the result of the entity's custom.

50. Further, the entity's policy or custom must have been the "moving force" behind the alleged deprivation. This "custom or policy" requirement is a dramatic departure from the rule of respondeat superior that prevails in many common law actions.

51. A local government is said to have an unconstitutional policy when it fails to train its employees, and the failure to train amounts to deliberate indifference to an obvious need for such training, and the failure train will likely result in the employee making a wrong decision.

52. An unconstitutional policy may also exist if an isolated action of a government employee is dictated by a "final policymaker," or if the authorized policymaker approves a subordinate's decision and the basis for it.

53. However, a supervisor can only be liable in his individual capacity if he directly participates in causing the harm--relying upon respondeat superior is insufficient.

13

54. The Supreme Court has rejected the notion that a plaintiff must meet a heightened pleading standard to state a claim against a municipality for an unconstitutional custom or policy.

55. Section 1983 is not itself a source of substantive rights, it merely provides a method for the vindication of rights elsewhere conferred in the United States Constitution and Laws.

56. Therefore, a plaintiff may prevail only if he can demonstrate that he was deprived of rights secured by the United States Constitution or federal statutes. It is beyond the scope of these statutory authorities to discuss all of the rights available under the United States Constitution, nevertheless, this article will provide an overview of perhaps the most utilized of all constitutional provisions--the Fourteenth Amendment Due Process Clause [hereinafter "the Due Process Clause"].

57. The Supreme Court has held that the Due Process Clause was not intended to supplant tort law, or to become "a font of tort law to be superimposed upon whatever systems may already be administered by the states."

58. Against this backdrop, to state a claim for a deprivation of Due Process, a plaintiff must show: (1) that he possessed a constitutionally protected property interest; and (2) that he was deprived of that interest without due process of law.

59. Due process property interests are created by "existing rules or understandings that stem from an independent source such as state law--rules or understanding that secure certain benefits and that support claims of entitlement to those benefits."

60. To have a property interest protected by the Due Process Clause, "a person must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it.

14

61. He must, instead, have a legitimate claim of entitlement to it." While the existence of a protected property interest is decided by reference to state law, the determination of whether due process was accorded is decided by reference to the Constitution.

62. Due process requires that "a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case,'" but the state does not have to provide the same remedies available under section 1983 in order to satisfy due process.

63. In construing the Due Process Clause, the United States Supreme Court has held that negligent acts by state actors do not effect a "deprivation" for the purposes of the Due Process Clause, and the random and unauthorized conduct of a government actor, even if intentional, does not implicate the Due Process Clause if the state provides a meaningful post-deprivation remedy, such as, for example, a tort remedy in its own courts.

64. However, where the state can feasibly provide a pre-deprivation hearing, it must do so regardless of the post-deprivation remedies available, and in the absence of a special relationship created or assumed by the state, a state's failure to protect an individual from violence or injury caused by private actors cannot state a violation of the Due Process Clause.

65. In addition to protection against deprivations of procedural due process, the Due Process Clause has two substantive components--the substantive due process simpliciter, and incorporated substantive due process.

66. In order to state a claim for a violation of the substantive due process simpliciter, the plaintiff must demonstrate that the defendant engaged in conduct that was "arbitrary, or conscience shocking, in a constitutional sense."

67. This form of due process has very limited application, but, in contrast to certain procedural due process claims, the existence of adequate post-deprivation remedies does not bar a substantive due process claim.

68. With respect to incorporated substantive due process, the plaintiff may state a claim by proving a violation of one of the Bill of Rights. The Supreme Court has held that one of the substantive elements of the Due Process Clause protects those rights that are fundamental--rights that are implicit in the concept of ordered liberty, and has, over time, held that virtually all of the Bill of Rights protect such fundamental rights and has likewise held that they apply to the states through the "liberty" interest of the Due Process Clause.

69. However, the Court has held that when a specific provision within the Bill of Rights already provides protection, the more generalized notion of due process should not be used to define constitutional rights.

70. In addition to providing a remedy for deprivations of constitutional rights, section 1983 also makes actionable violations of federal "Laws." A violation of a federal statute is cognizable only when the violation trammels a right secured by federal law.

71. However, a statute is said to create a federal right only when "the provision in question is intended to benefit the putative plaintiff," unless it reflects merely a congressional preference for a certain kind of conduct rather than a binding obligation on the government unit, or unless the putative plaintiff's interest is too vague and amorphous such that it is beyond the competence of the judiciary to enforce.

72. There is no requirement that the plaintiff sue in state court because federal courts have concurrent jurisdiction, and the usual rule is exhaustion of administrative and judicial state remedies is not a prerequisite to a section 1983 action.

73. Also, the existence of concurrent state remedies is not a bar to a section 1983 action. With respect to the extent of damages available, the Supreme Court has noted that the basic purpose of a section 1983 damages award is to compensate the victims of *official misconduct*, and therefore held that there is no limit on actual damages if they can be proven.

74. But where they are not proved, only nominal damages of $1.00 may be awarded. Punitive damages may also be awarded, but not against a municipality. Injunctive relief is also permitted.

# CAUSES OF ACTION

## FIRST CAUSE OF ACTION

75. Petitioner alleges a deprivation of constitutionally protected rights - to wit: Articles IX and XIV of the United States Constitution, Bill of Rights - by defendants while acting under color of law in violation of Title 42 U.S.C. § 1983 *by enforcing a[ny] law, which shall abridge the privileges or immunities of citizens of the United States;* nor shall any state deprive any person of life, liberty or property, without due process of law; *nor deny to any person within its jurisdiction the equal protection of the law.*

## SECOND CAUSE OF ACTION

76. Petitioner alleges a deprivation of constitutionally protected rights - to wit: Articles IX and XIV of the United States Constitution, Bill of Rights - by defendants while acting under color of law in violation of Title VII of the Civil Rights Act of 1964.

## THIRD CAUSE OF ACTION

77. Petitioner alleges a deliberate infliction of emotional distress.

## FOURTH CAUSE OF ACTION

78. Petitioner alleges pain and suffering.

## FIFTH CAUSE OF ACTION

79. Petitioner alleges embarrassment.

## SIXTH CAUSE OF ACTION

80. Petitioner alleges failure to exercise the care that a reasonably prudent person would exercise in like circumstances.

Petitioner(s) demand(s) a trial by (Court)

## 3. PRAYER FOR RELIEF

**WHEREFORE,** Petitioner(s) request(s) that this Court grant the following relief: one hundred thousand dollars in compensatory damages; injunctive relief in that the record of the sham proceeding be stricken from the permanent court record and/or otherwise expunged; one hundred and fifty thousand dollars in punitive damages, interest, court costs and attorney's fees.

I declare under penalty of perjury that the foregoing is true and correct.

**DATED**: October 11, 2013

Signature of Petitioner(s)

18